## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2019, 6:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

ATTORNEY FOR APPELLEE

Kelly A. Lonnberg
Stoll Keenon Ogden, PLLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Marriage of | January 31, 2019 |
| Jeffrey E. Nelson, | Court of Appeals Case No. 18A-DR-1577 |
| *Appellant-Respondent,* | |
| v. | Appeal from the Vanderburgh Superior Court |
| | The Honorable Leslie C. Shively, Judge |
| Julie A. Nelson, | |
| *Appellee-Petitioner* | The Honorable J. Zach Winsett, Special Judge |
| | Trial Court Cause No. 82D01-1601-DR-32 |

**Crone, Judge.**

# Case Summary

[1] This is the fourth appeal in the contentious dissolution of marriage proceedings between Jeffrey E. Nelson ("Husband") and Julie A. Nelson ("Wife"). Here, Husband appeals the trial court's order finding him in contempt of court accompanied by a writ of attachment providing for Husband to serve forty-five days in the Vanderburgh County Jail or to purge himself of the contempt by paying $27,374.48 for unpaid spousal maintenance and attorney's fees. Husband asserts that the trial court erred in finding him in contempt and further erred in setting the purge amount. Finding no error, but concluding that remand is necessary for reconsideration of the purge amount, we affirm and remand.

# Facts and Procedural History

[2] While the background of this case is extensive and procedurally convoluted, we need only provide a brief recitation of what is relevant to this appeal. Husband and Wife married in Illinois on April 28, 2012. The day before their marriage, the parties executed a prenuptial agreement. On January 8, 2016, Wife filed a

verified petition for dissolution of marriage as well as a motion for provisional order. Following a hearing, the trial court entered a provisional order that provided in relevant part that, during the pendency of the dissolution proceedings, Husband was to pay Wife's monthly rent payments plus $2500 per month in spousal maintenance. Husband was also ordered to pay $20,000 in both current and prospective attorney's fees to Wife's counsel. Husband was granted temporary possession of the marital residence and was responsible for all debts and expenses associated therewith.

[3] Thereafter, Wife filed various motions and petitions requesting the trial court to interpret the parties' prenuptial agreement and seeking other provisional relief, including additional attorney's fees. Accordingly, the trial court has held multiple hearings and entered multiple provisional orders. Husband appealed each of those orders, and different panels of this Court have issued memorandum decisions on the narrow issues presented therein. *See Nelson v. Nelson*, No. 18A-DR-248, 2018 WL 4403437 (Ind. Ct. App. Sept. 12, 2018); *Nelson v. Nelson*, No. 18A-DR-794, 2018 WL 4003368 (Ind. Ct. App. Aug. 9, 2018); *Nelson v. Nelson*, No. 82A01-1607-DR-1706, 2017 WL 765900 (Ind. Ct. App. Feb. 28, 2017).

[4] Relevant to the current appeal, on May 8, 2018, Wife filed an information for contempt and petition for attorney's fees. Wife alleged that Husband was in violation of several court orders, including the court's order that he maintain the condition of the marital residence and list it for sale, that he pay Wife's rent, and that he pay Wife's maintenance. By agreement of counsel for both

Husband and Wife, a hearing date was set for May 16, 2018. Husband failed to appear at the hearing. His counsel stated on the record, "[M]y client was advised of the hearing. He's not here…. And I obviously advised him of the purpose of today's hearing and the repercussions of not attending." Tr. Vol. 2 at 36. At the request of Husband's counsel, and over Wife's objection, the trial court continued the contempt proceedings. The parties agreed to a hearing date of May 29, 2018, to address numerous issues, including whether Husband "should be found in contempt and sanctioned accordingly…." *Id*. at 42.

[5] Husband did not appear at the May 29 hearing. When the trial court inquired regarding Husband's whereabouts, his counsel stated, "I don't know, Your Honor. I don't know where he is." *Id* at 47. When then asked whether Husband had notice of the hearing, his counsel responded, "Yes." *Id*. The court proceeded to take evidence on various issues. At the conclusion of the hearing, the trial court stated that, "Certainly the Court has enough general evidence to show there's probable cause that [Husband] is in indirect contempt of this Court. However, in order to fashion an appropriate remedy, I need to have [Husband] here." *Id*. at 75-76. Accordingly, the trial court gave Husband yet a third opportunity to be heard on the issue of his contempt. Counsel for both parties agreed to a hearing date of June 4, 2018. On May 31, 2018, Wife's counsel filed a subpoena for Husband to appear.

[6] A hearing commenced on June 4, 2018. Husband did not appear. Again, his counsel indicated, "I do not know where he is right now." *Id*. at 79. The trial court then made the following statement:

> This is the second time I've continued the hearing on the information for contempt, request for attorney fees to give your client an opportunity to be present and be heard. I want the record to reflect that in anticipation of the next appeal in this case.

*Id.* During the hearing, Wife's counsel submitted an exhibit, without objection, detailing Wife's expenses, including two months of maintenance ($5000), that Husband had not paid.[1] Wife's counsel also submitted an affidavit for her attorney's fees incurred from January 1, 2018, to June 3, 2018. Regarding Husband's ability to pay those expenses and fees, the trial court stated that it was specifically considering all evidence "going back to the beginning of these proceedings, oil reserves in the control of [Husband], [and] the documentation provided by [Husband] of funds that are available to [him] through third parties, which are in excess of six figures[.]" *Id.* at 89.[2]

[7] At the conclusion of the hearing, the trial court found Husband in contempt and issued an order that provides in pertinent part:

> 1. The Court finds [Husband] in contempt for failing to pay the Wife's rent, failure to pay provisional maintenance, failure to maintain the marital property, and failure to keep utilities on the martial residence. The Court also finds that the Wife is entitled to additional attorney fees not stayed by this Court which would be those fees incurred from January 1, 2018, to June 3, 2018,

---

[1] It appears that the exhibits offered and admitted at the May 16 and June 4 hearings were not provided to the trial court clerk by the court reporter, and thus they were not included in the record on appeal.

[2] Despite Husband's claims to the contrary, the record reflects that the trial court considered Husband's ability to pay prior to entering its contempt order.

now in the amount of Twenty-one Thousand Four Hundred Fourteen and 48/100 Dollars ($21,414.48) plus additional fees of Nine Hundred Sixty Dollars ($960.00) for preparation and attendance at the hearing of this date June 4, 2018.

2. The Court now orders a writ of attachment issued for [Husband], for forty-five days at the Vanderburgh County Jail, straight time, with no goodtime credit. [Husband] may purge himself by paying Twenty-seven Thousand, Three Hundred Seventy-four and 48/100 Dollars ($27,374.48) for unpaid maintenance fees and attorney fees as reflected above.

Appealed Order at 1-2. This appeal ensued.

# Discussion and Decision

[8] Whether a party is in contempt is a determination left to the discretion of the trial court. *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016). The trial court has the inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. *Id*. (citation and quotation marks omitted). On appeal, we will consider the evidence and all reasonable inferences drawn therefrom that support the trial court's determination, and we will not reweigh evidence nor judge the credibility of the witnesses. *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). As such, we will reverse a trial court's contempt determination only where an abuse of discretion has been shown, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Bessolo v. Rosario*, 966 N.E.2d 725, 730 (Ind. Ct. App. 2012), *trans. denied*.

Contempt of court generally involves disobedience of a court or court order that "undermines the court's authority, justice, and dignity." *Reynolds*, 64 N.E.3d at 832 (citation omitted). A person who is guilty of any willful disobedience of any process, or any order lawfully issued by any court of record, is guilty of indirect contempt of the court that issued the process or order. Ind. Code § 34-47-3-1. Indirect contempt involves those acts committed outside the presence of the court which nevertheless tend to interrupt, obstruct, embarrass or prevent the due administration of justice. *Reynolds*, 64 N.E.3d at 832 (citation and quotation marks omitted).

## Section 1 – The trial court did not err in finding Husband in indirect contempt.

Husband asserts that the trial court erred in finding him in indirect contempt because he was not afforded the procedural safeguards for such a finding. Our legislature has codified the procedural prerequisites to a finding of indirect contempt in Indiana Code Section 34-47-3-5, which provides in pertinent part:

> (a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:
>
> (1) before answering the charge; or
>
> (2) being punished for the contempt;
>
> to be served with a rule of the court against which the contempt was alleged to have been committed.
>
> (b) The rule to show cause must:

(1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;

(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

[11] In *Reynolds*, our supreme court noted that this statute fulfills the due process requirement that a contemnor be provided with adequate notice and an opportunity to be heard. *Reynolds*, 64 N.E.3d at 833. The *Reynolds* court elaborated that while generally a trial court's authority to find a person in contempt rests on whether the court has strictly complied with the statute, strict compliance may be excused if it is clear that the alleged contemnor nevertheless had clear notice of the accusations against him or her. *Id*.

[12] We acknowledge that no rule to show cause was issued by the trial court as required by Indiana Code Section 34-47-3-5. Nevertheless, the record makes it abundantly clear that Husband had notice of the accusations against him as well as notice of the time and place he was required to appear and show cause why he should not be attached and punished for contempt. Wife filed a detailed information for contempt specifying the allegations against Husband, and Husband's counsel repeatedly appeared at the scheduled hearings and represented to the trial court that, despite having notice of the proceedings, Husband was inexplicably absent. Moreover, the court twice continued the

contempt proceedings to give Husband the opportunity to appear and be heard. Husband's assertions on appeal that he was not afforded adequate notice and an opportunity to be heard are not well taken by this Court. The trial court's noncompliance with Indiana Code Section 34-47-3-5 is excused under the circumstances, and we therefore decline Husband's request to reverse the trial court's finding of contempt on these grounds.

[13]     Husband very briefly asserts that the evidence presented at the numerous hearings is insufficient to support a contempt finding because there was no evidence that he "willfully and intentionally disobeyed the order[s] of the Court." Appellant's Br. at 24.[3] Wife presented ample evidence of Husband's violation of various court orders,[4] and, as the party in contempt, it is Husband's burden on appeal to show that his acts were not willful. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005). Husband has not met that burden. The trial court did not err in finding Husband in indirect contempt.

---

[3] In his reply brief, Husband expands his sufficiency argument and blames the trial court for the alleged lack of evidence supporting a finding of contempt, and for the first time challenges the summary form of the contempt proceedings as well as several prior hearings. Any challenge to the use of summary proceedings by the trial court is waived by Husband's failure to object to the format of the proceedings at the time. *Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015). Further, an argument cannot be advanced for the first time in a reply brief, and therefore the issue is waived. *See Crossmann Communities, Inc. v. Dean*, 767 N.E.2d 1035, 1044 (Ind. Ct. App. 2002) (issues raised for the first time in a reply brief are waived); Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

[4] Even an erroneous order must still be obeyed. *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997). "A party's remedy for an erroneous order is appeal and disobedience of the order is contempt." *Id.*

# Section 2 – Remand is necessary for reconsideration of the contempt purge amount.

[14]     Having concluded that the trial court did not err in finding Husband in indirect contempt, we turn to address the sanctions imposed. "[I]t is within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of the court's order." *Bechtel v. Bechtel*, 536 N.E.2d 1053, 1056 (Ind. Ct. App. 1989). Indeed, sanctions in a contempt proceeding "may seek both to coerce behavior and to compensate an aggrieved party." *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 631 (Ind. Ct. App. 2001), *trans. denied*. When a court exercises its inherent civil contempt power and fashions a coercive contempt sanction, we have typically required that there be an opportunity for the contemnor to purge himself of contempt. *See generally Moore v. Ferguson*, 680 N.E.2d 862, 865-66 (Ind. Ct. App. 1997), *trans. denied*. For example, where the trial court imposes a sanction of incarceration, the incarceration order may be "conditioned on the payment of money or the accomplishment of a single task[.]" *In re the Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1210 (Ind. Ct. App. 2009).

[15]     Here, after finding Husband in indirect contempt, the trial court issued a writ of attachment for Husband to serve forty-five days at the Vanderburgh County Jail, but provided that Husband could purge himself of contempt by paying $27,374.48 in unpaid spousal maintenance and attorney's fees. At the time the trial court entered its order, Husband's appeal of the trial court's provisional order directing him to pay $36,000 in Wife's attorney's fees and certain expert

fees was still pending. Another panel of this Court has since issued its decision reversing the trial court's fee award based upon the language of the parties' prenuptial agreement. *See Nelson*, 2018 WL 440347, at *2.[5] "Under the Law of the Case Doctrine, an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts." *Anderson v. Gaudin*, 42 N.E.3d 82, 87 n.5 (Ind. 2015) (quotation marks omitted). Thus, to the extent that the purge amount set by the trial court here specifically includes attorney's fees that have since been determined to be unrecoverable due to the parties' prenuptial agreement, we remand to the trial court to amend its order to omit those specific fees.[6] That said, we leave it entirely to the trial court's discretion on remand to reconsider and reset the purge amount to any amount it believes necessary to coerce Husband's behavior and to compensate Wife. Understandably, the reset purge amount may be higher or lower than that previously ordered by the trial court. In sum, our review of the record reveals that Husband has repeatedly interrupted, obstructed, embarrassed, and

_____

[5] Specifically, the panel found that "the attorney fees provision of the [prenuptial agreement], which entitles a party who has retained counsel to enforce or prevent the breach of the [prenuptial agreement] to payment of attorney fees by the other party *if* the first party prevails, governs Wife's request of attorney fees." *Nelson*, 2018 WL 440347, at *2. Accordingly, the panel concluded, "As Wife has not prevailed in this ongoing action, she is not yet—if ever—entitled to the payment of her attorney fees." *Id*. (footnote omitted).

[6] Contrary to Husband's claims, this Court did not determine that Wife cannot recover *any* attorney's fees during this ongoing action. Rather, the panel reversed the trial court's $36,000 provisional award of fees and remanded for the trial court to determine what portion of that award was attributable to Wife's then current request for fees and amend the order to omit those fees only. *Nelson*, 2018 WL 440347, at *2. Indeed, the *Nelson* panel noted that a portion of the $36,000 award was attributable to several previous awards of attorney's fees that Husband did not timely challenge, and therefore those amounts were unaffected by this Court's decision. *Id*. at *2 n.7. Therefore, Husband would still owe any of those amounts that remain outstanding.

prevented the due administration of justice in these dissolution proceedings, and the trial court has the power to do what it deems necessary to prevent further disobedience of its orders.[7]

[16] Affirmed and remanded.

Vaidik, C.J., and Mathias, J., concur.

---

[7] *See supra* note 4.