

**FILED**
Sep 21 2015, 8:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Stephen P. Rothberg
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Whittaker, | September 21, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 02A03-1503-DR-79 |
| v. | Appeal from the Allen Superior Court |
| Wilma Sharlene Whittaker, | The Honorable Charles F. Pratt |
| *Appellee-Respondent* | Trial Court Cause No. 02D07-9511-DR-351 |

**Bailey, Judge.**

## Case Summary

[1]     James Whittaker ("Husband") filed a petition seeking to have his ex-wife,

Wilma Whittaker ("Wife") held in contempt of court for her failure to pay sums

designated as maintenance[1] in a settlement incorporated into a dissolution decree. The trial court concluded that Wife owed Husband a fixed sum of $76,173.44, as of June 25, 2013, enforceable by execution but not contempt. Husband presents the sole, consolidated issue of whether the trial court reached an erroneous legal conclusion as to enforcement remedies. We reverse and remand with instructions to the trial court to address the merits of Husband's petition for contempt.

## Facts and Procedural History

[2] Husband and Wife were married on October 25, 1969. On August 2, 2000, the trial court dissolved the parties' marriage and approved and adopted their Marital Settlement Agreement ("the Agreement").

[3] With respect to Wife's interest in a deferred benefit retirement plan referred to as the Indiana State Teacher's Retirement Fund, the Agreement provided in pertinent part:

> At such time as Wife becomes eligible for and receives benefit/payment as a result of her interest in the Indiana State Teacher's Retirement Fund, Wife shall be under an affirmative obligation to inform Husband by certified mail of such event, in addition to which, she will provide to Husband adequate evidence of any benefit paid to and/or received by her by reason

---

[1] The sums were to be considered maintenance to Husband to the extent that they were taxable income to Wife.

of her participation and interest in said Indiana State Teacher's Retirement Fund. . . .

Wife shall pay to husband an amount equal to one-half of the following: An amount equal to the fractional share of the total of Wife's benefit, the numerator for which shall be the number of months the parties were married (348 months), and the denominator of which shall be the total service in number of months, or service credit in months, wife had in the Indiana State Teacher's Retirement Fund on the occasion of her retirement and commencement of benefit payment. Wife shall be obligated to pay to husband the amount indicated above from sums received by her, irrespective of such alternate elections Wife may make with respect to distribution or payment to her of monies available from the Indiana State Teacher's Retirement Fund. To the extent sums paid by the Indiana State Teacher's Retirement Fund to Wife are taxable as income to Wife, then those amounts payable and paid by Wife to Husband shall be deemed maintenance payments by Wife to Husband and shall be reported by Husband as income and deductible to Wife on Husband and Wife's respective income tax returns.

(App. at 20-21.) The Agreement further provided that, if Wife failed to timely pay Husband sums due, the monies due should immediately become a lien against Wife's property. Paragraph 11 of the Agreement provided in relevant part:

Husband and Wife expressly agree that payments provided for hereunder shall be enforceable in the same manner as maintenance payments and not restricted to such remedies as are provided for in collection of judgments alone.

(App. at 28.) Wife began to receive retirement benefits on May 1, 2008. She rolled over $167,500 into a Capital Bank and Trust IRA.

[4] On July 8, 2008, Husband filed his Motion to Enforce Decree of Dissolution. Wife filed a Motion to Clarify or Motion for Relief. On March 28, 2009, Husband received his first payment from Wife. Thereafter, Wife paid Husband $761.07 on a monthly basis.

[5] In March of 2010, Wife filed an Amended Motion to Clarify or Motion for Relief. The parties filed cross-motions for summary judgment. On May 18, 2012, the trial court entered an order stating that, "as a matter of law," Husband was granted "a fractional share of Wife's interest in the Indiana State Teacher's Retirement Fund, which includes both her pension benefit and annuity benefit." (App. at 7.) The order further stated that additional evidence was necessary for the court to determine whether Wife had breached the Agreement.

[6] The parties engaged in discovery and, on June 25, 2013, the trial court conducted a hearing on the pending motions for enforcement, clarification, and relief. On October 16, 2013, the trial court entered an order finding that Wife had breached the terms of the Agreement by failing to properly notify Husband of her receipt of retirement benefits, delaying monthly payments to Husband, and withholding funds from her defined contribution plan (annuity). The trial

court concluded that Wife owed Husband $76,173.44 plus attorney's fees in the amount of $14,083.50.[2]

[7] On November 5, 2014, Husband filed his "Verified Information for Contempt." (App. at 11.) On December 8, 2014, Wife was ordered to provide Husband's counsel with documentation of account balances with Pro Fed Financial Advisors. On January 12, 2015, a hearing was conducted. On February 3, 2015, the trial court issued an order acknowledging that Wife owed Husband a judgment of $76,173l.44 as of June 25, 2013, but further providing: "The judgment is not subject to enforcement or collection by contempt." (App. at 31.) Husband appeals.

# Discussion and Decision

[8] Husband argues that the trial court's refusal to enforce Wife's obligation by contempt constitutes an impermissible modification of the 2000 dissolution decree. At the outset, we observe that Wife chose not to file an Appellee's Brief. When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee. *McKinney v. McKinney*, 820 N.E.2d 682, 685 (Ind. Ct. App. 2005). We apply a less stringent standard of review with respect to showings of reversible error when an appellee has failed to file a brief, and may reverse the trial court if the

---

[2] On March 20, 2014, a partial release of judgment was filed, reflecting the payment of $14,083.50 in attorney's fees.

appellant is able to establish prima facie error. *Id.* In this context, "prima facie" means "at first sight, on first appearance, or on the face of it." *Id.* (internal citations omitted).

[9] Divorcing parties are permitted to draft their own settlement agreements. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). Such agreements are contractual in nature and, once incorporated into the trial court's final order, become binding on the parties. *Id.* The dissolution court that adopted the agreement retains jurisdiction to interpret the terms of property settlement agreements and to enforce them. *Id.* Nevertheless, because we are reviewing the construction of the terms of a written contract, which is a pure question of law, our standard of review is de novo. *Id.*

[10] When we interpret a binding agreement, we apply the general rules applicable to the construction of contracts. *Id.* Unless the terms of the contract are ambiguous, they are to be given their plain and ordinary meaning. *Id.* Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence, but will merely apply those provisions. *Id.*

[11] Here, the parties agreed that, when Wife began to receive her pension benefits, she would be liable to Husband for payments that would be treated as spousal maintenance for tax purposes. The Agreement further specified that the liability was enforceable as an obligation for spousal maintenance. At the same time, however, the Agreement contemplated an immediate lien against Wife's

property in the event of default. According to Husband, the trial court simply disregarded any provisions of the Agreement and treated Wife's obligation for delinquent payments as if it were ordinary debt enforceable only through execution.

[12] Due to the prohibition against imprisonment for debt in Article I, § 22 of the Indiana Constitution, and "because parties may enforce obligations to pay a fixed sum of money through execution as provided in Trial Rule 69, all forms of contempt are generally unavailable to enforce an obligation to pay money." *Cowart v. White*, 711 N.E.2d 523, 531 (Ind. 1999). However, Indiana Code Section 31-15-7-10 provides in relevant part: "Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by contempt[.]"

[13] Thus, we are required to look at the original order sought to be enforced. A panel of this Court has observed:

> if a final money judgment – one requiring a person to pay a fixed sum of money to the other party – is entered, contempt is not an available remedy for noncompliance. Indiana Trial Rule 69 is the correct remedy for noncompliance with a money judgment. However, in the absence of a money judgment, contempt is an available remedy for noncompliance with a dissolution decree.

*Mitchell v. Mitchell*, 871 N.E.2d 390, 395 (Ind. Ct. App. 2007). In *Mitchell*, the Court concluded that the dissolution order (requiring the husband to pay the mortgage and credit card debts) did not constitute a money judgment requiring one party to pay a fixed sum of money to the other party and, therefore, the

trial court was not barred from using its contempt powers to enforce compliance with the order. *Id.*

[14] Similarly, in *Dawson v. Dawson*, 800 N.E.2d 1000, 1003 (Ind. Ct. App. 2003), we recognized that "a trial court may use its contempt power to enforce an order that requires performance instead of payment of a fixed sum to coerce a party into compliance with an underlying order or decree." The dissolution decree, which had incorporated the parties' settlement agreement, imposed upon the husband an obligation to refinance or pay a second mortgage; he claimed that he had been ordered to pay a fixed sum of money and thus the obligation could be enforced in proceedings supplemental but not by contempt. *Id.* The wife asserted that she did not hold a money judgment and thus relief under Trial Rule 69 was unavailable to her; the *Dawson* Court agreed. *Id.* at 1003-04. The Court explained:

> [T]he trial court has the authority to find [husband] in contempt for his failure to comply with the Dissolution Decree precisely because of his failure to perform, rather than a failure to pay a set amount of money to [wife]. This determination is consistent with *Cowart*, wherein our supreme court held that the trial court's use of its contempt power to compensate White for Cowart's actions was not prohibited because the trial court's finding of contempt was based on Cowart's actions and failures to act, not on his failure to pay financial obligations. *See Cowart*, 711 N.E.2d at 531. In fact, here, the trial court is merely ordering [husband] to perform the provision in the Dissolution Decree, i.e., satisfy the second mortgage by whatever means necessary to remove it as a lien on the marital residence. The trial court was clearly within its discretion in exercising its contempt authority in the instant case.

*Id.* at 1004-05.

[15] The instant case also involves a failure to perform an obligation set forth in a dissolution decree. In 2013, Wife was making monthly payments to Husband but the trial court was asked to determine the amount of arrearage. However, the computation of delinquency was not an original order for payment of a fixed sum. Nor did it transform an obligation incorporated into a dissolution decree into a fixed money judgment outside the parameters of Indiana Code Section 31-15-7-10.

# Conclusion

[16] The trial court erred in refusing to address the merits of Husband's petition for contempt.

[17] Reversed and remanded.

Baker, J., and Mathias, J., concur.