## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 29 2016, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Thomas D. Seal
The Law Offices of Thomas D. Seal
Richmond, Indiana

ATTORNEY FOR APPELLEE

Steven F. Fillenwarth
Fillenwarth & Associates
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas D. Seal, *Appellant-Defendant,* <br><br> v. <br><br> Christine Seal, *Appellee-Plaintiff* | July 29, 2016 <br><br> Court of Appeals Case No. 33A01-1512-DR-2368 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Kit C. Dean Crane, Judge <br><br> Trial Court Cause No. 33C02-0305-DR-22 |

**Pyle, Judge.**

## Statement of the Case

[1] Thomas D. Seal ("Husband") appeals the trial court's order clarifying his settlement agreement, which was entered into pursuant to the dissolution of his

marriage, with his former wife, Christine Seal ("Wife"). In a stipulation amending their settlement agreement, Husband and Wife agreed to a formula for distributing Husband's military retirement pay. Husband was then allowed to retire earlier than expected due to the enactment of a federal statute. He requested a clarification from the trial court regarding whether his early retirement pay was subject to the distribution formula to which he had agreed. The trial court ruled that it was.

[2] On appeal, Husband argues that his early retirement pay should not be subject to the distribution formula for his retirement pay because the settlement agreement provided that he would receive all retirement benefits accrued after his divorce from Wife. Because we conclude that Husband agreed to the distribution formula, and the terms of the distribution formula are clear and unambiguous, we affirm the trial court's interpretation that Husband's early retirement benefits are subject to the distribution formula.

[3] We affirm.

## Issue

Whether the trial court erred in determining that Husband's early retirement pay was subject to distribution according to the terms of his modified settlement agreement.

## Facts

[4] Husband and Wife were married on June 2, 1982. At that time, Husband had been serving in the United States Air Force ("Air Force") for seven years. He

continued serving in the Air Force and Air Force Reserves throughout his marriage to Wife and until he retired in 2010 at the age of fifty-nine.

[5] On March 7, 2003, prior to Husband's retirement, Wife filed for a dissolution of the marriage. She and Husband entered into a property settlement agreement ("Agreement") that the trial court later incorporated into the decree of dissolution of marriage that it issued on July 7, 2003 ("Dissolution Decree"). In the Agreement, Husband and Wife specified that they would each be entitled to "50% of the benefit accrued under Husband's Air Force pension as of March 7, 2003" and that "Husband [was] entitled to all benefits accrued after March 7, 2003." (App. 10).

[6] Subsequently, Congress passed the National Defense Authorization Act for Fiscal Year 2008 ("the NDAA") in January 2008, which reduced the age at which some military reservists could retire. *See* 10 U.S.C. § 12731 (2014). The NDAA specified that for each ninety days a reservist spent on active duty after January 28, 2008, and in the same fiscal year, that reservist might be eligible for a three-month reduction in his or her retirement qualification age. 10 U.S.C. § 12831(f)(2)(A). After this statute was enacted, Husband served on active duty from October 2008 until January 2010.

[7] On January 5, 2009, almost six years after the entry of the Agreement and Dissolution Decree, the parties stipulated to modifying the Dissolution Decree on the subject of Husband's military retirement pay. In their stipulation ("Stipulation"), they agreed to add the following paragraph to their original

Dissolution Decree "[i]n an effort to modify the said decree of dissolution in a manner that will be acceptable to the Defense Finance and Accounting Service (DFAS):"

> The parties were married for ten (10) years or more while the Husband . . . performed ten (10) years or more of military service creditable for retirement purposes.[] The Wife . . . is awarded a percentage of the Husband's . . . disposable military retirement pay, to be computed by multiplying Fifty Percent (50%) . . . times a fraction, the numerator of which is 2,545 reserve retirement points earned during the period of marriage, divided by the Husband's . . . total number of reserve retirement points earned. For the purpose of this computation, the Husband's [], military pay is defined as the disposal military retired pay the member would have received had the member become eligible to receive military retired pay on March 4, 2017 at the rank of Lieutenant Colonel [] with 2,545 reserve retirement points and 21 years of service for basic pay purposes.

(App. 14-15). The trial court approved this Stipulation the next day, January 6, 2009.

[8] Thereafter, on August 24, 2015, Husband filed a motion with the trial court requesting a clarification of the terms of the Dissolution Decree and Stipulation in light of the NDAA. He noted that, if he had not served on active duty in the military after Congress had enacted the NDAA, he would not have been able to retire until he was sixty years old. As he did serve on active duty, he became eligible to receive his military reserve retirement pay in March 2016 when he was fifty-nine years old. Because his active duty service, which was the prerequisite for this eligibility, occurred after his marriage to Wife ended, he

requested a clarification in his motion regarding whether his early retirement pay was subject to division according to the formula he and Wife had established in the Stipulation.

[9] On October 14, 2015, the trial court issued an order clarifying the Dissolution Decree. It determined that if Husband applied for, and received, early retirement benefits, those benefits should be divided between him and Wife according to the Stipulation's formula. The trial court reasoned that nothing in the NDAA required Husband to retire early, so an early retirement was a voluntary act on his part.

[10] On October 23, 2015, Husband filed a motion for reconsideration.[1] The trial court granted the motion, set aside its previous order clarifying the Dissolution Decree, and allowed Wife twenty days to file a response to Husband's motion for clarification. On December 29, 2015, after receiving Wife's response to Husband's motion, the trial court issued an order concluding that Husband's August 2015 motion for an interpretation of the Stipulation had instead been an attempt to modify the Stipulation. The trial court then denied the motion, concluding that:

> Pursuant to the Stipulation, Wife is to receive a fraction of Husband's military retirement. The numerator of the fraction is 2,545 and the denominator is the total number of points earned during his military career. The Stipulation further states that for

---

[1] Husband did not include a copy of his motion for reconsideration in his Appendix, so it is not clear what his exact arguments were.

the purpose of this computation, Husband's military pay is defined as the disposable military retired pay Husband would have received if he became eligible to receive military retired pay on March 4, 2017 at the rank of Lieutenant Colonel (0-5) with 2,545 retirement points and 21 years of service. The purpose of this language is to very clearly and very specifically describe the benefit itself. It is not describing the timing of the benefit. The Stipulation is very clear that Wife is to receive Husband's disposable military retired pay. At the time the [S]tipulation was entered, Husband was on a specific course of conduct in order to receive early payment of his military retirement pay. If the payment of Husband's military retirement was to start at any other date than the date Husband begins to receive his pension benefit, as specific as the document is, it would have specifically stated that. It did not. Further, it is clear from the Stipulation that the reference to the definition of Husband's military pay "as the disposable military pay Husband would have received if he became eligible to receive military retired pay on March 4, 2017 at the rank of Lieutenant Colonel (0-5) with 2,545 retirement points and 21 years of service," is to assist DFAS in determining the denominator of the coverture fraction and the benefit amount to multiply by the coverture fraction. At the time of the Stipulation, the parties did not know how much longer [Husband] would be in the military[;] nor did they know how many more retirement points he would accumulate. This language is commonly used in dividing military pensions when the Service[]member has not retired at the time of the Decree.

(App. 35-36). Husband now appeals.

# Decision

On appeal, Husband argues that the trial court erred in determining that he has to distribute part of his early military retirement pay to Wife. As in his August 2015 motion for clarification, he asserts that this extra year of pay is an amount

that he earned solely through his employment after he and Wife divorced. Accordingly, he argues that he should not have to pay part of that benefit to Wife under the Dissolution Decree, because the decree provides that "Husband is entitled to all benefits accrued after March 7, 2003," the date that Wife filed for a dissolution of the marriage. (App. 10).

[12] In Indiana, divorcing parties are permitted to draft their own settlement agreements. *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015). Such agreements are contractual in nature and, once incorporated into the trial court's final order, become binding on the parties. *Id.* When we review the construction of the terms of a written contract, our standard of review is de novo. *Id.* We apply the general rules applicable to the construction of contracts. *Id.* That is, unless the terms of the contract are ambiguous, they are to be given their plain and ordinary meaning. *Id.* Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence but will merely apply those provisions. *Id.* Terms are not ambiguous merely because the parties disagree as to the proper interpretation of those terms. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). Further, we must review contracts as a whole and construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *State Farm Fire & Cas. Co. v. Riddell Nat. Bank*, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013), *trans. denied.* We will attempt to harmonize the provisions of a contract rather than interpret the provisions as conflicting. *Id.*

[13]     Here, the parties have two written agreements: the Agreement and the Stipulation. The Stipulation amended the Agreement to add the distribution formula as a means of calculating the proper distribution for Husband's retirement payments. Husband argues that this formula should not apply to his early payments, but he does not cite to any legal authority to support that argument other than the Agreement's provision that he, alone, is entitled to all benefits accrued after March 7, 2003. In other words, he essentially asks us to determine that the Agreement, but not the Stipulation, applies to his early retirement payments.

[14]     We conclude that such an interpretation would contradict the Stipulation's clear and unambiguous terms, to which Husband agreed. The Stipulation clearly states that its purpose is to "modify the said decree of dissolution in a manner that will be acceptable to the Defense Finance and Accounting Service (DFAS)." (App. 14). Thus, the Stipulation is a modification of the Agreement, not an alternative to the Agreement.

[15]     Moreover, the Stipulation's terms clearly and unambiguously apply to *all* of Husband's retirement payments. Specifically, it provides that:

> The Wife . . . is awarded a percentage of the Husband's . . . disposable military retirement pay, to be computed by multiplying Fifty Percent (50%) . . . times a fraction, the numerator of which is 2,545 reserve retirement points earned during the period of marriage, divided by the Husband's . . . total number of reserve retirement points earned. . . .

(App. 14-15). As the trial court noted, this formula clearly omits any limits based on the timing of the retirement benefits. We also find it significant that Husband agreed to this formula after Congress enacted the NDAA and after he had already begun his active service. If he had intended his early retirement pay to be exempt from this formula, he could have explicitly agreed to such an exemption, but he did not do so.

[16] Accordingly, in light of the clear language of the Agreement and Stipulation, we agree with the trial court that all of Husband's retirement pay is subject to the distribution formula to which he agreed, regardless of when he receives that pay.[2] Thus, the trial court did not err in interpreting the Agreement and Stipulation.[3]

[17] Affirmed.

Kirsch, J., and Riley, J., concur.

---

[2] Notably, it also appears that the Stipulation formula was designed to account for Husband's right to any benefits he accrued after his marriage to Wife because the fraction in the formula operates to reduce her share of his disposable retirement pay in the event that he accrues retirement points beyond the points he had accrued at the end of their marriage.

[3] We also note that, as the trial court concluded, to the extent that Husband argues that his pay should not be subject to the formula he agreed to in the Stipulation, he is requesting a modification of the Stipulation because such an interpretation would contradict its clear terms. A settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent. *Ring v. Ring*, 51 N.E.3d 1245, 1248 (Ind. Ct. App. 2016). Because Husband and Wife have not agreed to such a modification, the trial court also did not err in denying a modification. *See id.*